IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD BLOOM,<br><br>                    *Plaintiff,*<br><br>    v.<br><br>JP MORGAN CHASE BANK, N.A., CHASE MORTGAGE HOLDINGS, INC., CHASE HOME FINANCE, LLC, RUSHMORE LOAN MANAGEMENT SERVICES, LLC and U.S. BANK NATIONAL ASSOCIATION,<br><br>                    *Defendants.* | Civil Action No. 2:20-cv-1386<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Edward Bloom filed a complaint against Defendants JPMorgan Chase Bank, N.A.; Chase Mortgage Holdings, Inc.; and Chase Home Finance, LLC (collectively, "Chase") in the Common Pleas of Allegheny Court at Case No. GD-20-009018. Bloom challenged the amount due on his mortgage and brought seven claims against Chase and subsequent loan-owners Rushmore Loan Management Services, LLC ("Rushmore") and U.S. Bank National Association ("U.S. Bank"): (I) violations of the Truth in Lending Act ("TILA"); (II) violations of the Real Estate Settlement Procedures Act ("RESPA"); (III) violations of the Fair Credit Extension Uniformity Act ("FCEUA"); (IV) violations of the Fair Debt Collection Practices Act ("FDCPA") and FCEUA; (V) violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (VI) breach of contract; and, in the alternative, (VII) unjust enrichment. On September 16, 2020, Chase filed a Notice of Removal to this Court. (ECF No. 1). Now before

the Court is Chase's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (ECF No. 12).

## I. BACKGROUND

On August 25, 2007, Bloom borrowed $457,000 ("loan") from JPMorgan Chase Bank, N.A. ("JPMorgan") for the purchase of real property located at 3023 Fairview Road, Gibsonia, Pennsylvania 15044. (*See* ECF No. 1-2, ¶ 10). To secure the loan, Bloom executed a Note and a Mortgage for JPMorgan. By July 1, 2009, Bloom defaulted on the loan, and JPMorgan filed a foreclosure complaint against Bloom on December 3, 2009. (ECF No. 14, p. 6).

In January 2010, Bloom filed a Voluntary Petition for Chapter 13 Bankruptcy Protection ("Bankruptcy Proceeding"), which was converted to Chapter 11 in October 2011. In March 2011, the bankruptcy court entered a Bankruptcy Order for Bloom, which specified that Chase should apply a 5.25% interest rate for Bloom's Mortgage. (ECF No. 1-2, ¶ 18). In April 2011, the bankruptcy court confirmed Bloom's Chapter 11 Plan and dismissed the action the following June. On September 24, 2012, Chase filed a Notice of Mortgage Payment Change, which set Bloom's mortgage payment to $3,953.14 to start December 1, 2012. (ECF No. 14, p. 33).

Around March 31, 2012, Bloom made an oral agreement with Chase that he would make $1,500 monthly payments and that Chase would not impose late fees, penalties, charges or arrearages. (ECF No. 1-2, ¶ 21). Soon after, Bloom started paying $1,500 to Chase and continued to do so from March 31, 2012 until October 2014. (ECF No. 1-2, ¶ 22). On August 1, 2014, Bloom's previous counsel received a Chase Account Statement showing that Chase applied a 7.875% interest rate plus interest and penalties from October 1, 2010 through August 1, 2014. (ECF No. 1-2, ¶ 23). On August 26, 2014, Chase increased Bloom's principal balance by $58,843.40. (ECF No. 1-2, ¶ 24).

On October 27, 2014, Chase returned Bloom's check of $1,500 and said it was not enough to bring Bloom's account current. (ECF No. 1-2, ¶ 25). In November 2014, Bloom's previous counsel mailed a Qualified Written Request ("QWR") to Chase in the form of requests for information ("RFI") and notices of error ("NOE") under RESPA. (ECF No. 1-2, ¶¶ 26, 73, 79, 101). Bloom requested information on the loan's owner and printouts of all transactions, applied payment and rates and all RFIs. (ECF No. 1-2, ¶ 64).

Bloom's former and current counsel sent Chase Notices of Representation requesting Chase to communicate only with counsel. Those requests were dated November 21, 2014; April 26, 2016; May 2, 2016; and May 19, 2016. (ECF No. 1-2, ¶¶ 27, 53, 60, 73). Chase contacted Bloom directly by telephone on July 14, 2015; December 3, 2015; December 22, 2015; January 7, 2016; January 13, 2016; January 19, 2016; April 15, 2016; April 22, 2016; April 29, 2016; and May 6, 2016. (ECF No. 1-2, ¶¶ 43, 46, 47–52, 56, 61).

On June 6, 2017, Chase Home Finance LLC started the process of reassigning the Mortgage to U.S. Bank, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT. On June 16, 2017, Chase sent Bloom a letter informing him that, effective July 1, 2017, Chase would be transferring the servicing of the loan to Rushmore. (ECF No. 1-1, ¶ 105).

On April 1, 2019, U.S. Bank filed a mortgage foreclosure complaint against Bloom in the Court of Common Pleas of Allegheny County under the docket number MG-19-382 ("Foreclosure Action"). The loan had been in default for the March 1, 2013 payment and all payments later due. (ECF No. 1-2, p. 64). Bloom filed an Answer, New Matter and Counterclaims in the Foreclosure Action on June 7, 2019. On October 18, 2019, the court sustained U.S. Bank's Preliminary Objections and dismissed Bloom's Counterclaims in the Foreclosure Action.

Bloom then filed this action in the Court of Common Pleas of Allegheny County on August 21, 2020. Chase removed the Complaint to this Court on September 14, 2020.

## II.   STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although the Court must accept the allegations as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III. ANALYSIS

Bloom brings claims against Chase under TILA, RESPA, FCEUA, FDCPA, UTPCPL and for breach of contract and unjust enrichment. Chase argues each claim is time-barred. (ECF No. 24, p. 2). Bloom counters that his claims are "ongoing" and that each allegedly incorrect monthly statement reset the statute of limitations. (ECF No. 22, pp. 6–8). Chase disagrees.

Even reviewing the Complaint in a light most favorable to Bloom, the Courts holds that Bloom's claims fail either because they are facially time-barred or because he failed to plausibly state a claim. As such, the Court will grant Chase's Motion to Dismiss.

#### A. Statute of Limitations May Be Raised at the Motion to Dismiss Stage.

Dismissing a case at the motion to dismiss stage based on a limitations defense is disfavored unless the action is clearly time-barred. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). "Though a statute of limitations defense generally cannot be raised by way of a 12(b)(6) motion, an exception known as the 'Third Circuit Rule' permits this when the statute of limitations bar is apparent on the face of the complaint." *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 631 (3d Cir. 2010) (citing *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital*, 435 F.3d 396, 400 n.14 (3d Cir. 2006)); s*ee also Oshiver v. Levin*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."). The Court finds that the Third Circuit Rule applies here.

To determine that Bloom's claim is time-barred, the Court relies on the allegations made in the Complaint. The last action by Chase alleged occurred July 1, 2017. Bloom did not bring

this action until August 21, 2020. The Complaint, on its face, shows noncompliance with the applicable statutes of limitations.

Bloom tries to resuscitate his claims by invoking the continuing violation doctrine. Under the continuing violation doctrine, a plaintiff must show that (1) the last act evidencing the continuing practice falls within the limitations period and that (2) the defendant's conduct is more than the occurrence of isolated or sporadic acts. *DIRECTV, Inc. v. Rodkey*, 369 F. Supp. 2d 587 (W.D. Pa. 2005). The continuing violation doctrine applies to continual unlawful acts as part of a persistent pattern and not the continuation of consequences stemming from a single violation. *Menichino v. Citibank, N.A.*, No. CIV. A. 12-0058, 2013 WL 3802451, at *11 (W.D. Pa. July 19, 2013) (citing *Ocean Acres Ltd. P'ship v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)). The theory is often applied to civil rights and employment discrimination cases in which the various actions create a cumulative effect, but courts hesitate to expand it to other claims. *Id.* at *11–12. As explained below, each event is discrete and does not invoke the continuing violation doctrine. The Court will not apply the continuing violation doctrine.

### B. TILA

Bloom alleges Defendants, without specifying which of the defendants, violated TILA for many reasons including (1) failing to provide Bloom with the identification of the true owner of the loan, (2) failing to provide notice of the transfer of the loan, (3) improperly increasing the principal balance of the loan, (4) failing to specify that the loan could negatively amortize, and (5) failing to properly disclose late charges and their imposition. (ECF No. 1-1, ¶¶ 123, 124).

To maintain an action for either actual or statutory damages under TILA, a plaintiff must bring the action "within one year of the occurrence of the violation." 15 U.S.C. § 1640(e). Thus, "the one year limitations period must run from the date of the complained-of-violation . . . ." *Oldroyd v. Assocs. Consumer Discount Co./Pa.*, 863 F. Supp. 237, 240 (E.D. Pa. 1994).

Here, the TILA claim runs from the date on which the lender failed to make requisite disclosures. On June 16, 2017, Chase informed Bloom that the loan was being transferred to Rushmore. (ECF No. 1-1, ¶ 104). Chase later transferred servicing of Bloom's loan to Rushmore on July 1, 2017. (*Id.* ¶ 105). After the transfer, Chase took no further action. The latest possible date Chase could have committed a violation was on July 1, 2017, which means the statute of limitations ran out on July 1, 2018. Bloom did not commence this action until August 21, 2020. From the face of the Complaint, the TILA claim is time-barred. Count I against Chase is dismissed.

### C. RESPA

Bloom argues Chase is liable to him under RESPA because Chase failed to adequately respond to his QWRs. (ECF No. 1-1, ¶ 138). RESPA provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court in which the property involved is located . . . within 3 years in the case of violation of section 2605 of the title and 1 year in the case of a violation of section 2607 and 2608 of this title from the date of the occurrence of the violation[.]

12 U.S.C. § 2614. In some causes of action, the limitations period may be extended by the discovery rule. Under the discovery rule, a cause of action does not accrue until a plaintiff discovers or, while exercising reasonable diligence, should have discovered the basis for a claim against the defendant. *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 162 (3d Cir. 2016). The Third Circuit has held that the discovery rule, where the statute runs once the plaintiff discovers the violation, does not apply to RESPA claims "because Congress specifically provided that the limitations period begins to run 'on the date of the occurrence of the violation.'" *Id.* This statutory language forecloses applying the discovery rule.

Bloom argues that Chase is liable under § 2605(e) of RESPA. Section 2605(e) requires a servicer of a federally regulated mortgage to respond to a QWR within five business days. 12

7

U.S.C. § 2605(e)(1)(A). Because Bloom's claim arises out of a QWR, the three-year statute of limitations governs the claim.

The last QWR Bloom sent to Chase was on May 23, 2017. (ECF No. 1-1, ¶ 101). Chase received the QWR on May 26, 2017 and acknowledged the receipt of the claim within the requisite five-day period. (*Id.* ¶¶ 102, 103). Under the regulations of 12 C.F.R. § 1024.36(d)(2)(i)(A)–(B), based on the information requested, Chase was either required to respond to the QWR within ten or thirty days. At the latest, Chase needed to respond by July 10, 2017, which means that, under the three-year statute of limitations, Bloom needed to bring a claim before July 11, 2020. Bloom did not bring his claim until August 21, 2020. Thus, Bloom's claim under RESPA is time-barred. Count II against Chase is dismissed.

### D. FCEUA

Bloom claims Defendants repeatedly communicated with him despite knowing he was represented by counsel. (ECF No. 1-1, ¶ 137). Defendants also allegedly sent periodic incorrect mortgage statements that were false or misleading. (*Id.* ¶¶ 142, 143). The FCEUA bars "unfair methods of competition and unfair or deceptive acts or practices with regards to the collection of debts." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) (quoting 73 P.S. § 2270.2). The FCEUA's enforcement provision provides that "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL].'" *Id.* (quoting 73 P.S. § 2270.5(a)). The FCEUA, though, "does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL." *Id.*; *see Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) ("Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201-9.2, the remedial provision of the

UTPCPL, to obtain relief.") (quoting *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)).

Bloom alleges that Defendants, without specifying which Defendant, repeatedly communicated with him despite knowing that he was represented by an attorney. Bloom alleges that Defendants sent periodic mortgage statements between April 1, 2011 and August 1, 2014 referencing a 7.875% interest rate. (ECF No. 1-1, ¶ 142). Those correspondences were false, deceptive, misleading, unfair and unconscionable. (*Id.* ¶¶ 142, 143). Bloom also states generally that multiple correspondences sent between April 1, 2011 and July 8, 2016 were false, deceptive, misleading and mischaracterized his debt. (*Id.* ¶ 144).

Bloom's claim, under the FCEUA, fails as a matter of law because the FCEUA does not provide a private cause of action. Any relief sought must be through UTPCPL's remedial provision. Count III against Chase is dismissed.

### E. FDCPA

Bloom alleges that the statements that referenced a 7.875% interest rate that were sent between April 1, 2011 and August 1, 2014 were false, deceptive and misleading and therefore violated the FDCPA. (ECF No. 1-1, ¶¶ 149, 150). To establish a FDCPA claim, a plaintiff must show that: (1) he is a consumer; (2) the defendant is a debt collector; (3) the debt collector sought to collect a "debt" as defined by the FDCPA; and (4) the collection attempt violated the FDCPA. *Jensen v. Pressler & Pressler*, 791 F.3d 413, (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). "Creditors—as opposed to 'debt collectors'— generally are not subject to the [FDCPA]." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)). Entities that collect on the debt they own are not considered "debt collectors" under the FDCPA. *See Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1724 (2017) ("All that matters is whether the

9

target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'"). Any actions brought "under the FDCPA must be brought 'within one year from the date on which the violation occurs.'" *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130 (3d Cir. 2009) (quoting 15 U.S.C. § 1692k(d)).

Chase argues that it is not subject to the FDCPA because it is not a "debt collector" under the statutory definition, neither as an entity whose principal purpose is the collection of any debts nor an entity that regularly collects debts owed by others. (ECF No. 13, p. 14). Chase was the owner of the loan until it assigned it to U.S. Bank in 2017. Bloom does not dispute these facts and does not argue that Chase is a debt collector. The Court finds that Chase is not subject to the FDCPA because it does not fall under the statutory definition of "debt collector."[1] Count IV against Chase is dismissed.

**F. UTPCPL**

Bloom argues that Chase violated the UTPCPL when it orally agreed to $1,500 monthly payments and when it improperly increased the principal balance by $58,843.40. (ECF No. 22, p. 5). The UTPCPL provides a right of action for anyone who "suffers any ascertainable loss of money or property" because of "an unlawful method, act or practice." 73 P.S. § 201-9.2. UTPCPL's "catchall" provision prohibits any "fraudulent or deceptive conduct" that "creates a likelihood of confusion or misunderstanding." *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa. Super. 2015). Because § 201-9.2 of the UTPCPL provides for a civil action not subject to a limitations period, UTPCPL is subject to the six-year "catchall" statute of limitations. *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. 1987).

---

[1] Chase also argues that were it subject to the FDCPA, Bloom's claim falls outside the one-year statutory limit. The Complaint alleges that the last time Chase sent a correspondence referencing an allegedly incorrect interest rate was August 1, 2014. Bloom did not file until 2020, well after the alleged wrongdoing.

10

To properly bring forth a claim under the UTPCPL's catch-all provision, a plaintiff must either prove (1) the elements of common-law fraud or (2) deceptive conduct. *See Hena v. Vandegrift*, No. CV 18-762, 2020 WL 1158640, at *20 (W.D. Pa. Mar. 10, 2020) (quoting *Belmont v. MB Inv. Partners*, Inc., 708 F.3d 470, 498 (3d Cir. 2013)). A plaintiff must only allege conduct that has "the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649 (Pa. 2021). A plaintiff, though, must show that he justifiably relied on the defendant's conduct. *Id.* at 646.

Bloom alleges that Chase violated the UTPCPL when it orally agreed to $1,500 monthly payments; when it capitalized $58,843.40 in interest fees on August 26, 2014; when Chase returned Bloom's October 20, 2014 payment and threatened foreclosure on October 27, 2014; and when Chase sent a letter to Bloom on July 8, 2016 identifying Chase Mortgage Holdings, Inc. as the investor of the loan. (ECF No. 1-1, ¶¶ 155–58).

Chase argues that Bloom's claim is time-barred and that the latest date for a claim is August 1, 2014. (*Id.* at 15–16). Whether the statute should run from the initial oral agreement on March 31, 2012 or from when Chase refused Bloom's check on October 20, 2014 is unclear. Because of this, the Court will not dismiss based on the statute of limitations.

Despite any potentially misleading or fraudulent disclosures, Bloom, though, does not plead the circumstances under which he learned about the possibility of a cause of action. Showing that the disclosures were misleading is insufficient. Bloom bears the burden of plausible pleading, which means he must set forth the circumstances that led him to the possible existence of his claim. *See Menichino*, 2013 WL 3802451, at *10 (finding that requiring plausible pleading helps a court determine whether the plaintiff was on inquiry notice). Bloom does not describe how he was

prevented from asserting or knowing about his claim. Thus, Bloom has not plausibly pled a claim under the UTPCPL. Count V against Chase is dismissed.

### G. Breach of Contract

Bloom alleges that Defendants breached contracts. Bloom argues that the imposition of a 7.875% interest rate from April 1, 2011 through August 1, 2015 was not authorized by contract but does not specify which contract. (ECF No. 1-1, ¶ 162). Bloom also proffers that he and Chase contracted orally that Bloom would submit $1,500 monthly payments and that Chase would not impose any penalties or interest. (*Id.* ¶¶ 162, 163). According to Bloom, Chase later breached the oral agreement when it returned his October 20, 2014 payment. Finally, Bloom alleges that Chase breached a contract, again without specification, because the August 26, 2014 capitalization of $58,843.40 was not authorized by contract. (*Id.* ¶ 168).

The Court first turns to Bloom's oral agreement. Pennsylvania's Statute of Frauds prohibits enforcement of a contract for the lease of property for a term longer than three years or for the conveyance of a fee simple or other estate of land unless it is in writing. *Firetree, Ltd. v. Dep't of Gen. Servs.*, 978 A.2d 1067, 10743 (Pa. Commw. 2009). Any agreement to modify a mortgage or refrain from enforcing its terms is subject to the statute of frauds and must be in writing. *In re Commonwealth Renewable Energy, Inc.*, 540 B.R. 173, (Bankr. W.D. Pa. 2015).

Because the oral agreement involved a mortgage modification, the parties needed to put their changes in writing. And because they did not do so, the statute of frauds prevents Bloom from bringing forth a breach of contract claim for any issues arising out of the mortgage modification.

Turning to the other breach of contract claims, the Court considers Pennsylvania's statute of limitations, which bars claims for breach of contract after four years. 42 Pa. C.S. § 5525.

Usually, "an action founded on a contract accrues when the contract is breached." *Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 578–79 (W.D. Pa. 2017).

Bloom alleges Chase breached its contracts, without clarifying which contract, on August 1, 2014; August 26, 2014; and October 27, 2014. Because the statute of limitations begins running at the time of a breach, the latest date Bloom could bring a claim was October 27, 2018. Bloom did not file until 2020. Thus, Bloom's claim for breach of contract is barred by the statute of limitations. Count VI against Chase is dismissed.

### H. Unjust Enrichment

Bloom also argues that Defendants were unjustly enriched. A claim for unjust enrichment requires a plaintiff to prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant's acceptance and retention of the benefit is unjust or inequitable. *Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 620 (W.D. Pa. 2013). "The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual nature of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (1969)). As a result, a court should dismiss an unjust enrichment claim when the relationship between the parties stems from a contract. *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 361 (E.D. Pa. 2013).

Chase claims Bloom cannot establish a claim for unjust enrichment because Bloom has not remitted funds sufficient to cover a full month's payment on the loan since March 1, 2013. Even still, he cannot claim unjust enrichment for making payments he was contractually obligated to make. Bloom did not respond to Chase's argument. The Court finds that because Bloom's and

Chase's relationship stems from a contract, unjust enrichment is inapplicable. Count VII against Chase is dismissed.

### I. Equitable Tolling

Bloom argues that equitable tolling applies and should stop the clock for his time-barred claims. A plaintiff may invoke the theory of equitable tolling whenever a plaintiff is "prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). It is an "extraordinary remedy" that the courts should only use "sparingly." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Equitable tolling applies (1) when "the defendant has actively misled the plaintiff" about his rights; (2) when "the plaintiff in some extraordinary way has been prevented from asserting" his rights; or (3) when "the plaintiff has timely asserted" his rights "mistakenly in the wrong forum." *Hedges v. U.S.*, 404 F.3d 744, 751 (3d Cir. 2005) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997)). Equitable tolling is inapplicable if the plaintiff was on inquiry notice for the possibility of the existence of a claim yet failed to investigate the possibility. *Cetel v. Kirwan Fin. Grp.*, 460 F.3d 494, 507 (3d Cir. 2006). A plaintiff is on inquiry notice when circumstances exist so that a reasonable person, through due diligence, would discover his injury. *Id.*

To invoke equitable tolling, a plaintiff must show both that the defendant sought to conceal its actions and that the plaintiff exercised reasonable diligence to assert or guard his rights. *Menichino*, 2013 WL 3802451, at *8 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994)). The plaintiff must also show that the defendant actively misled the plaintiff in a manner that went "*above and beyond* the wrongdoing that underlies the substantive cause of action." *Id.* (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008)). Thus, Bloom must set forth a plausible factual basis for invoking

14

equitable tolling. And Bloom should be able to plead with specificity when he uncovered the wrongdoing and what further actions he took. *See id.* (finding it reasonable to require a plaintiff to plead with specificity because a plaintiff has all the necessary facts when filing the complaint).

Chase argues that it never "actively" misled Bloom. (ECF No. 25, p. 6). All allegations hinge on Chase's communication with Bloom or their allegedly false statements. (*Id.*). But these actions did not prevent Bloom from recognizing the validity of his claim. Bloom provided no specificity for his equitable tolling claim. Bloom claims the documents were misleading, but by all accounts, Bloom seemed to have known at the time that the statements were allegedly wrong when he received them. Bloom failed to show that Chase actively tried to prevent him from asserting his claim and has not shown how he actively exercised reasonable diligence to guard his right. The Court finds Bloom has not properly pled a claim for equitable tolling.

## IV.   CONCLUSION

Counts I through IV and VI and VII are dismissed with prejudice as time-barred. Count V will be dismissed without prejudice because of improper pleading. For these reasons, Chase's Motion to Dismiss will be granted, and it will be terminated as a party in this case. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__6-21-21__
Dated